# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

THE BINSWANGER COMPANIES,
            *Plaintiff-Appellant,*

v.

MERRY-GO-ROUND ENTERPRISES,
INCORPORATED; DEBORAH HUNT
DEVAN, Trustee; MGR DISTRIBUTION
CORPORATION; MGRR,
INCORPORATED,

            *Defendants-Appellees.*

No. 01-1378

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-00-3192-JFM, BK-94-50161)

Argued: October 31, 2001

Decided: December 6, 2001

Before WILKINS, NIEMEYER, and LUTTIG, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Paul R. Rosen, SPECTOR, GADON & ROSEN, P.C.,
Philadelphia, Pennsylvania, for Appellant. Cynthia Louise Leppert,
NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A., Balti-
more, Maryland, for Appellees. **ON BRIEF:** Leslie Beth Baskin,

Kelly R. Ramsdell, Robert H. Kwait, SPECTOR, GADON & ROSEN, P.C., Philadelphia, Pennsylvania, for Appellant. Deborah Hunt Devan, NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A., Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Appellant, The Binswanger Companies (Binswanger), challenges an order of the district court affirming a bankruptcy court order entering judgment against Binswanger on its claim for recovery of a brokerage commission. Finding no error, we affirm.

### I.

Binswanger is an association of companies specializing in brokering commercial and industrial real estate. In late 1995, Binswanger learned that a Chapter 11 reorganization proceeding involving Merry-Go-Round Enterprises, Incorporated (MGR) would likely be converted to a Chapter 7 liquidation. Binswanger approached MGR with the hope of obtaining an exclusive listing contract for the sale of MGR's distribution center ("the Facility").

Although MGR had not yet decided to sell the Facility or to employ Binswanger as its broker, Binswanger, attempting to impress MGR, immediately began attempts to find a buyer for the Facility. With MGR's permission, Binswanger showed the Facility in January 1996 to representatives from The May Department Store Company (MDSC). Soon thereafter, MGR's board of directors authorized its chief financial officer to enter into an agreement with Binswanger to list the property. The parties began negotiations, but still had not entered into a final agreement by February 23. On that date, the

board, anticipating the conversion of the Chapter 11 reorganization to a Chapter 7 proceeding, revoked its authorization for MGR to enter into an agreement with Binswanger. On March 1, the anticipated conversion from Chapter 11 to Chapter 7 occurred, and a trustee, Deborah Hunt Devan, was subsequently appointed.

Several days later, on March 5, Binswanger sent a letter to the trustee requesting that she employ Binswanger to broker the sale of the Facility. Binswanger also forwarded a copy of a $15 million offer from MDSC dated February 27, 1996. This offer, which required that MGR remove certain equipment from the Facility at a cost to the seller of approximately four million dollars, was not accepted by the trustee. Furthermore, the trustee decided to employ Keen Realty (Keen), rather than Binswanger, to broker the sale.* Counsel for the trustee sent Binswanger a letter on March 25 taking the position that the trustee would not be obligated to pay Binswanger any commission in the event that MDSC eventually purchased the Facility.

By March 25, 1996, MDSC had not made a firm decision regarding purchase of the Facility, and it was seriously considering several alternatives. Nevertheless, on that date, MDSC submitted an offer of $16.5 million (that did not require removal of the equipment) directly to the trustee. Another prospective buyer, The Gap, subsequently began submitting offers for purchase of the Facility. Ultimately, the trustee accepted a $19 million offer from MDSC (that did not require removal of the equipment) that was dated June 12, 1996. Pursuant to her agreement with Keen, the trustee paid Keen a $215,000 commission.

Binswanger filed suit within the MGR bankruptcy proceedings, alleging, *inter alia*, that Binswanger was entitled under Maryland state law to a brokerage commission for the sale of the Facility to MDSC. Binswanger subsequently moved for summary judgment, contending that it was entitled to judgment as a matter of law on its allegation that it was the "procuring broker" for the sale. *See* Md. Code Ann., Real Prop. § 14-105 (1996). The bankruptcy court denied the motion, concluding (1) that there was a genuine issue of material fact regarding whether Binswanger was the procuring broker, and (2)

---

*The bankruptcy court subsequently approved Keen's appointment.

that even if Binswanger was the procuring broker, it could be prevented from recovering on the basis that the Binswanger brokers who brokered the sale were not licensed in Maryland, *see* Md. Code Ann., Bus. Occ. & Prof. § 17-516 (2000). *See Binswanger Cos. v. Merry-Go-Round Enters. (In re Merry-Go-Round Enters.)*, 231 B.R. 241 (Bankr. D. Md. 1999). The trustee then moved for summary judgment, arguing that the fact that the individuals who brokered the sale of the facility were not licensed in Maryland entitled the trustee to judgment as a matter of law. The bankruptcy court denied that motion as well, however, concluding (1) that the license requirement would not prevent Binswanger's recovery should the bankruptcy court decide to approve Binswanger as the broker of the sale on a *nunc pro tunc* basis, *see* 11 U.S.C.A. § 327(a) (West 1993); Md. Code Ann., Bus. Occ. & Prof. § 17-102(1) (2000), and (2) that there existed a genuine issue of material fact regarding whether Binswanger was entitled to *nunc pro tunc* approval.

After a trial, the bankruptcy court concluded that Binswanger would be entitled to *nunc pro tunc* approval only if it was entitled under Maryland law to a commission. Turning to that issue, the court found that Binswanger's introduction of MDSC and MGR was purely voluntary, that the trustee never employed Binswanger formally, and that any implied employment ended on March 25, 1996. The court also determined that Binswanger failed to prove that MDSC was ready, willing, and able by March 25 to meet the terms under which the sale was eventually made. On this basis, the court concluded that Binswanger was not the procuring broker for the offer the trustee accepted; therefore, the trustee did not impliedly accept Binswanger as its broker by accepting that offer. Accordingly, the bankruptcy court granted judgment to the trustee.

The district court affirmed, concluding (1) that Maryland's licensing requirement precluded any recovery under a procuring broker theory, (2) that the finding that Binswanger was not the procuring broker was not clearly erroneous, and (3) that denial of *nunc pro tunc* approval was appropriate in light of Binswanger's unjustified failure to request appointment by the bankruptcy court prior to the sale of the Facility. *See Binswanger Cos. v. Merry-Go-Round Enters.*, 258 B.R. 608 (D. Md. 2001).

## II.

Binswanger contends that the district court erred in affirming the bankruptcy court order, arguing primarily that the bankruptcy court erred in finding that Binswanger was not the procuring broker of the June 12 offer. Having had the benefit of oral argument and the parties' briefs, we conclude that the district court correctly decided the issues before it. Accordingly, we affirm on the reasoning of the district court.

*AFFIRMED*